Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| YVETTE RIVERA ROMÁN<br><br>Recurrida<br><br>v.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Recurrente<br><br>COMISIÓN INDUSTRIAL DE PUERTO RICO<br><br>Agencia Recurrida | KLRA202500348 | REVISIÓN JUDICIAL Procedente de la Comisión Industrial de Puerto Rico<br><br>Caso C.I. Núm.: 03-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-02<br><br>Caso CFSE Núm.: 03-13-20344-0<br><br>Sobre: Sin jurisdicción |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 11 de agosto de 2025.

El 11 de junio de 2025, el Administrador de la Corporación del Fondo del Seguro del Estado (en adelante, CFSE o parte recurrente) compareció ante este Tribunal de Apelaciones y presentó una *Solicitud de Revisión*. En esta, nos solicita la revocación de la *Resolución* emitida por la Comisión Industrial de Puerto Rico (en adelante, Comisión Industrial o Comisión) el 26 de marzo de 2025 y notificada el 10 de abril de 2025. Por virtud del aludido dictamen, la Comisión Industrial determinó que el recurso apelativo instado en el caso de epígrafe el 20 de noviembre de 2024, en cuanto a una decisión del Administrador de la CFSE del 16 de diciembre de 2004, se presentó a tiempo.

Examinado el legajo apelativo, al amparo de las disposiciones legales aplicables que más adelante exponemos, resolvemos **revocar** la determinación recurrida.

Número Identificador

SEN2025 _____

## I.

Surge del legajo apelativo que, el 18 de marzo de 2003, la Sra. Ivette Rivera Román (en adelante, Rivera Román) presentó un *Informe Patronal* ante la CFSE debido a que mientras laboraba en la Comisión Industrial de Puerto Rico (en adelante, Comisión Industrial o parte recurrida) sintió dolor de pecho, náuseas, problemas en la nariz, garganta, pulmones y dificultad para respirar.[1] Sostuvo que, para dicha fecha, estaban pintando y poniendo lozas cerca de su área de trabajo.

El 22 de julio de 2003, el Administrador del CFSE (en adelante, Administrador) decretó el alta sin incapacidad de la señora Rivera Román.[2] Esta determinación fue apelada.[3] El 22 de septiembre de 2003, se celebró vista médica sobre apelación. Allí se le ordenó al Administrador a evaluar y emitir una decisión institucional sobre el Informe del doctor Santana, ENT del 12-6-03; archivar sin perjuicio el recurso pendiente sobre tratamiento e incapacidad hasta tanto se emita la decisión institucional solicitada. Se establecieron también los honorarios a ser pagados al Lcdo. Bernardo Mudafort Farah, representante legal de la señora Rivera Román en apelación (en adelante, licenciado Mudafort Farah).

El 21 de septiembre de 2004, el licenciado Mudafort Farah presentó *Moción* sobre Demora según Artículo 7 de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935 (en adelante, Ley Núm. 45).[4] Allí, señaló que había transcurrido un año desde que al Administrador se le había ordenado a emitir decisión final sin que así lo hubiera hecho. El 16 de diciembre de 2004, la CFSE notificó *Decisión del*

---

[1] Allí, la señora Rivera Román indicó que su dirección postal era HC−03 Box 40708, Caguas PR 00726.

[2] El documento está dirigido a la señora Rivera Román a la dirección mencionada en la previa nota al calce.

[3] La apelación fue sometida por derecho propio. No obstante, no existe controversia en cuanto a que el Lcdo. Bernardo Mudafort Farah compareció luego a asumir la representación legal de la señora Rivera Román. Es importante para la controversia que hoy atendemos señalar que, al así hacerlo, el Licenciado Mudafort Farah informó que su dirección postal era Suite No. 155, PO BO 70250, San Juan, PR 00936-8250.

[4] 11 LPRA Sec. 1, *et seq.*

*Administrador- Decisión Especial*. Según se desprende, dicho documento le fue notificado a la señora Rivera Román al HC 03 Box 40708, Caguas PR 00726 y al licenciado Mudafort Farah al PO Box 34287, San Fernando Station, Río Piedras, PR 00926. No hay controversia en cuanto a que esta última dirección no era la correcta.

Así las cosas, el 26 de noviembre de 2024, notificada el 13 de diciembre de 2024, la Comisión dictó una *Resolución*. En esta, recogió las incidencias ocurridas durante una audiencia que citó para el 20 de noviembre de 2024, así como los distintos argumentos levantados en la vista. En síntesis, se estableció que la *Decisión del Administrador- Decisión Especial* no fue recibida por el licenciado Mudafort Farah, pues la dirección para notificación allí indicada no es aquella informada al asumir representación legal. Sobre este hecho, en la *Resolución* se estableció que el CFSE reclamó la defensa de incuria, mientras que el licenciado Mudafort Farah levantó la defensa establecida en <u>Berríos v. Comisión de Minerías</u>, 102 DPR 228 (1974). La Comisión determinó señalar continuación de vista pública y citar a la señora Rivera Román a "mostrar interés en la continuación del trámite de su caso y para que su testimonio pueda ser evaluado por las partes."

El 15 de enero de 2025, se llevó a cabo la audiencia citada. Allí, ambas partes reiteraron sus respectivas defensas. La Comisión entonces escuchó a la señora Rivera Román. La *Resolución Interlocutoria* del 27 de enero de 2025, recoge lo siguiente:

> Debidamente juramentada, a preguntas del Lic. Bernardo Mudafort, la lesionada respondió que en la decisión del Fondo, notificada el 16 de diciembre del 2004, se puso el zip code 00726 y su zip code es 00725. No recuerda haber recibido esa decisión. Tiene interés en su caso, porque continúa con fatiga. Tuvo que continuar con tratamiento privado, porque no recibió nada de ninguna índole y tomó sus propias decisiones de tratarse por su cuenta a nivel privado. Tiene que tener un récord de tratamiento privado, pero con el Huracán María se perdieron muchas cosas. Actualmente, recibe tratamiento con Albuterol y tiene una pompa de rescate que se da una por la mañana y una por la tarde.

A la pregunta del Comisionado, la lesionada contestó que el zip code de Caguas, Puerto Rico es 00725.

A preguntas de la Lic. Sharon Arroyo, la lesionada respondió que para octubre del 2003 trabajaba en la Comisión Industrial en Río Piedras. Dejó de trabajar en la Comisión Industrial en el 2003. Cogió unas vacaciones y se fue para lo que se llamaba Cruz Azul, donde estuvo un tiempo. Luego, la llamaron del Departamento de Justicia. Lo que indicó en el informe patronal; cuando tuvo esas manifestaciones del aspecto respiratorio, fue que había alguien pintando con pintura de aceite y se intoxicó, porque estaba cerca de esa área. La llevaron en ambulancia y no recuerda a dónde. La atendieron y comenzó en el Fondo. Fue un evento en el que estaban pintando con pintura de aceite y por ese evento fue para el Fondo.

La Lic. Sharon Arroyo solicitó un receso para verificar el informe patronal.

Reanudados los procedimientos, a preguntas de la Lic. Sharon Arroyo, la lesionada respondió que en el informe patronal indicó que estaban pintando y poniendo unas lozas cerca de su área de trabajo. Sintió molestias de dolor en el pecho, náuseas, problemas de la nariz garganta, pulmones y dificultad al respirar. Eso fue para el 2003. Después de esa fecha, asistió a todas las citas que le dio el Fondo. No sabe y no se explica en qué momento fue que todo se paralizó. Desde el 2004 no tuvo una cita relacionada a este caso en el Fondo del Seguro del Estado, si es que así se refleja en el expediente. En este momento se trata su condición con el Dr. Edgardo Hernández, generalista. No se está tratando con ningún neumólogo.

A la pregunta del Lic. Bernardo Mudafort, la lesionada respondió que tiene interés en continuar su caso en el Fondo, si es posible, para terminar y cerrar el caso y para continuar con el proceso. Lleva un tiempo que le molestan los olores de perfume, se fatiga y no puede estar en el ambiente donde haya humo. Se afectó y tiene que bregar con su salud. Porque se paralicen los sistemas, porque no corran o por cualquier evento que surja, el paciente es el que se perjudica.

Luego de escuchar a la señora Rivera Román y recibir los planteamientos levantados por los abogados, el Comisionado solicitó a ambos a someter memorando de derecho en 30 días.[5] El 13 de marzo de 2025, así lo hizo la señora Rivera Román. El CFSE presentó *Memorando de Derecho en Cumplimiento de Orden* el 14 de marzo de 2025.

El 10 de abril del año en curso, la Comisión Industrial notificó *Resolución* en la que formuló las siguientes determinaciones de hechos:

1. La Sra. Yvette Rivera Román (en adelante, la lesionada), según Informe Patronal, sufrió un accidente en el trabajo o enfermedad ocupacional, el 3 de marzo de 2018, mientras laboraba en la Comisión Industrial de Puerto Rico, descrito como debido a que estaban pintando y poniendo lozas cerca de

---

[5] Esta Resolución Interlocutoria fue notificada el 13 de enero de 2025.

su área de trabajo sintió molestia, dolor en el pecho, náuseas, problemas nariz y garganta y pulmones y dificultad al respirar.

2. La lesionada apeló por derecho propio, el 15 de agosto de 2003, ante la Comisión Industrial, la Decisión del Administrador del Fondo del Seguro del Estado sobre Tratamiento Médico (Alta Sin Incapacidad) para el Caso, notificada el 22 de julio de 2003.

3. El Lcdo. Bernardo Mudafort Farah presentó Moción de Representación, para el Caso CI 03-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-02/Yvette Rivera Román, ante la Comisión Industrial de Puerto Rico, el 12 de septiembre de 2003, constando como dirección postal del representante legal: Suite No.155, P.O. Box 70250, San Juan, PR 00936-8250.

4. El 21 de octubre de 2003, la Comisión Industrial de Puerto Rico, notificó Resolución (Resultado de Vista Médica) para el Caso Cl 03-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-02 / Yvette Rivera Román donde, entre otras, ordenaba al Administrador de la Corporación del Fondo del Seguro del Estado que evaluara y emitiera Decisión Institucional sobre Informe del doctor Santana, ENT del 12-06-03.

5. El 21 de septiembre de 2004, el Lcdo. Bernardo Mudafort Farah presentó ante el Fondo del Seguro del Estado y la Comisión Industrial una Moción sobre: Demora Art.7 a Tenor Resolución de Vista Médica notificada el 21 de octubre del 2003. Se desprende de tal documento como dirección del representante legal: P.O. Box-70250 y lo que aparenta leer Suite 155 [por la posición del fotocopiado no se desprende claramente el resto de la dirección].

6. Con fecha del 16 de diciembre de 2004, la Corporación del Fondo del Seguro del Estado notificó Decisión del Administrador - Decisión Especial donde en resumen expone que: Vistos los hechos, examinada la prueba obrante en autos, se resuelve que la peticionaria sufrió un Episodio de Rinitis, relacionado al accidente reportado. Se ordena otorgarle la íntegra protección de la Ley. También, presenta la condición de Síndrome sinobronquial, condición bacteriana, no relacionada al accidente aceptado. Se resuelve haber dado cumplimiento a lo ordenado por el organismo administrativo revisor. Se ordena el cierre y archivo del presente caso, en lo que a este aspecto se refiere.

7. Se desprende de la Decisión del Administrador - Decisión Especial objeto de análisis el haber sido notificada a la lesionada a la dirección: HC-03 Box 40708, Caguas PR 00726 y al representante legal de la lesionada a la dirección: PO Box 34287, San Fernando Station, Río Piedras, PR 00926.

8. El representante legal de la lesionada, Lcdo. Bernardo Mudafort Farah, alega que no recibió la Decisión del Administrador - Decisión Especial por haber sido notificada a una dirección vieja que antes tenía; o sea, a una dirección antigua y que advino en conocimiento de esta Decisión durante la Vista celebrada el 20 de noviembre de 2024, por lo cual se debe entender como Apelada [en Sala] y que se cite nuevamente a la Vista Médica.

9. La representación legal de la Corporación del Fondo del Seguro del Estado alega que de haber algún defecto de notificación al abogado, la decisión se le notificó a la lesionada; por lo que el término de casi veinte años de falta de gestiones por parte del

representante legal está sujeto a la doctrina de incuria, porque el término para apelar es de treinta (30) días.

10. El representante legal de la lesionada sostiene que su posición encuentra defensa en lo dictaminado en el caso Brígido Berríos v. Comisión de Minerías y que se supone que la Corporación del Fondo del Seguro del Estado notifique al abogado correctamente.

11. La representación legal del Asegurador manifiesta que se trata de una situación respiratoria en la lesionada que pudo haber terminado como que pudo haberse agravado por situaciones que pueden haber sucedido durante todo este tiempo que pudieran afectar el resultado de una Vista Médica. Señala, a su vez, que el deber y responsabilidad del lesionado y representante legal era darle seguimiento y continuidad al caso.

12. La lesionada argumenta que no recuerda haber recibido esa Decisión y tiene interés en su caso porque continúa con fatigas. Alega, además, que tomó sus propias decisiones de tratarse por su cuenta, a nivel privado, porque no recibió nada de tratamiento, de ninguna índole. De los expedientes médicos del tratamiento privado manifiesta que se le pudieron haber perdido como consecuencia del Huracán María y que recibe tratamiento con Albuterol y "pompa de rescate" en la noche y la mañana.

Basándose en tales determinaciones y el derecho aplicable que citó, la Comisión resolvió, entre otras cosas, que "el recurso apelativo instado por la representación legal de la parte apelante, el 20 de noviembre de 2024, sobre Decisión del Administrador- Decisión Especial, de fecha 16 de diciembre de 2004, fue presentado dentro del término apelativo dispuesto en la Ley Núm. 45 […]". En desacuerdo con tal dictamen, el 30 de abril de 2025, la CFSE solicitó su reconsideración.

El 13 de mayo de 2025, la Comisión notificó *Resolución (en Reconsideración)* mediante la cual modificó la parte dispositiva de la resolución previamente emitida en el caso. No obstante, se reafirmó en asumir jurisdicción sobre el caso. Inconforme, el 11 de junio de 2025, la CFSE instó el recurso de epígrafe y señaló la comisión de los siguientes errores:

Erró la Comisión Industrial al determinar que la petición de apelación en vista pública del 20 de noviembre de 2024, sobre la decisión del Administrador de la CFSE notificada el 16 de noviembre de 2004, se presentó dentro del término apelativo dispuesto en la Ley 45-1935, en lugar de declararse sin jurisdicción.

> Erró en derecho la Comisión Industrial al no acoger la doctrina de incuria y determinar que no había justificación para una apelar una decisión casi veinte (20) años luego de emitida y notificada la decisión del Administrador.

Atendido el recurso, el 16 de junio de 2025, emitimos una *Resolución* en la cual concedimos a la parte recurrida el término dispuesto en el Reglamento de este Tribunal de Apelaciones, para que presentara su oposición. Hoy en día así no lo ha hecho, por lo que damos por sometido el asunto sin el beneficio de su comparecencia, exponemos el derecho aplicable y procedemos a resolver.

II.

A.

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq*. A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. 3 LPRA Sec. 9671. Sobre el alcance de esta revisión, la Sección 4.5 de la LPAU establece que las determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente, mientras que las conclusiones de derecho serán revisables en todos sus aspectos.[6]

En nuestro ordenamiento jurídico ha sido la norma general por años que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. Ahora bien, recientemente nuestro Tribunal Supremo, en consideración del lenguaje específico de la Sección

---

[6] 3 LPRA Sec. 9675.

4.5 de la LPAU, adoptó la normativa establecida en <u>Loper Bright Enterprises v. Raimondo</u>, 603 US 369 (2024). Así pues, concluyó que la interpretación de las leyes es una tarea inherente de los tribunales. En virtud de ello, enunció que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos y no guiarse por la deferencia automática que se aplica a estas decisiones. <u>Vázquez v. Consejo de Titulares</u>, 2025 TSPR 56, 215 DPR _____. Específicamente, nuestro más alto foro allí consigno que "[…] los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Pero principalmente, contrario a la práctica de las pasadas décadas, **los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua."** (énfasis en el original)[7]

*B.*

Mediante la aprobación de la Ley Núm. 45 del 18 de abril de 1935, 11 LPRA Sec. 1 *et seq.*, según enmendada, mejor conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo, (Ley 45) nuestra Asamblea Legislativa reconoció el derecho de todo trabajador de estar protegido contra riesgos a su salud por lesiones en el empleo. 11 LPRA Sec. 1a. Así pues, con tal propósito, se creó la Corporación del Fondo del Seguro del Estado. 11 LPRA Sec. 1b.

El discutido estatuto, es una legislación de carácter remedial que concede ciertas garantías y beneficios al obrero en el contexto de los accidentes o las enfermedades ocupacionales que ocurren en el trabajo. Así pues, la Ley 45 establece un sistema de seguro compulsorio y exclusivo para compensar a los obreros que sufran lesiones o enfermedades en el curso del

---

[7] Es importante destacar que en el citado caso nuestro más alto foro no modificó la evaluación y respetó las determinaciones de hechos alcanzadas por las agencias.

empleo, brindándoles un remedio rápido, eficiente y libre de las complejidades de una reclamación ordinaria en daños. Hernández Morales et al. v. C.F.S.E., 183 DPR 232, 239-240 (2011).

En virtud de lo antes consignado, los remedios que contempla la Ley 45 incluyen asistencia médica, incapacidad transitoria, incapacidad parcial permanente, incapacidad total permanente o compensación por muerte. 11 LPRA Sec. 3. Estos remedios, según expresa el propio estatuto, están disponibles a favor de todo obrero o empleado que sufriere lesiones o enfermedades ocupacionales dentro de las condiciones de la ley y tal cual establece su Artículo 2. 11 LPRA Sec. 2.

La Ley 45 además de lo ya consignado, tuvo a bien crear la Comisión Industrial. Esta, deberá velar por el cumplimiento de los objetivos sociales de la Ley 45. De igual forma, tendrá ciertas funciones "cuasi judiciales" para la investigación y resolución de todos los casos de accidentes en los que la CFSE y el empleado lesionado o sus beneficiarios, no alcancen un acuerdo sobre la compensación. 11 LPRA Sec. 8 (B)(1). En lo pertinente a la controversia de autos, la Ley Núm. 45 fija un término de treinta (30) días, a partir de haber sido notificado, para que un obrero o empleado pueda apelar una determinación del CFSE ante la Comisión Industrial de Puerto Rico.[8]

### C.

Las exigencias del debido proceso de ley contra la privación arbitraria o irrazonable de un interés individual de libertad o propiedad, tanto en su vertiente sustantiva como la procesal, es extensiva a las actuaciones de las agencias administrativas. Katiria's Café, Inc. v. Municipio Autónomo de San Juan, 2025 TSPR 33, 215 DPR ___. Para satisfacer las exigencias mínimas del debido proceso de ley, en su vertiente procesal, nuestra jurisprudencia ha reiterado que se deben cumplir con los

---

[8] 11 LPRA sec. 11.

requisitos siguientes: (1) **notificación adecuada del proceso**; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el récord. *Id.*, al citar a <u>Vázquez González v. Mun. de San Juan,</u> 178 DPR 636, 643 (2010); <u>Hernández v. Secretario</u>, 164 DPR 390, 395-396 (2005); y otros. (énfasis suplido)

La Sección 3.14 de la Ley 170 de 12 de agosto de 1988, según enmendada, mejor conocida como la Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico,[9] 3 LPRA Sec. 2164, establecía que las órdenes o resoluciones finales debían notificarse con copia simple por correo ordinario a las partes, y a sus abogados de tenerlos a la brevedad posible. Además, debía archivarse en autos copia de la orden o resolución final y de la constancia de la notificación. A su vez, la citada sección disponía que una parte no podría ser requerida de cumplir con una orden final a menos que dicha parte hubiera sido notificada de la misma.

La mencionada sección establece que la orden o resolución final a notificarse deberá, entre otras cosas, advertir del derecho a solicitar la reconsideración ante la agencia, presentar una apelación ante una agencia administrativa con jurisdicción, o de instar el recurso de revisión judicial ante el Tribunal de Apelaciones. Igualmente, dispone que cumplido este requisito comenzarán a correr dichos términos cronológicos, **más aplicará la doctrina de incuria en aquellas ocasiones en las cuales esa advertencia no se realice, resulte defectuosa, inadecuada, errónea o incorrecta.**

La incuria se define como la dejadez o negligencia en el reclamo de un derecho, la cual en conjunto con el transcurso del tiempo y otras

---

[9] Este estatuto fue derogado y sustituido por la Ley 38-2017. Citamos esta disposición legal debido a ser la ley aplicable al 16 de diciembre de 2004, fecha en la que la CFSE emitió la Decisión del Administrador- Decisión Especial cuya apelación es aquella sobre la que la Comisión Industrial asumió jurisdicción en noviembre del 2024.

circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad. IM Winner, Inc. v. Mun. de Guayanilla, 151 DPR 30 (2000). No basta el mero transcurso del tiempo para impedir el ejercicio de la causa de acción, sino que deben evaluarse otras circunstancias antes de decretar la desestimación del recurso instado. Circunstancias tales como, "la justificación, si alguna, de la demora incurrida, el perjuicio que ésta acarrea y el efecto sobre intereses privados o públicos involucrados". Además, cada caso deberá ser examinado a la luz de sus hechos y circunstancias particulares. *Id.*

III.

En síntesis, mediante la discusión de los dos errores que señala, la CFSE reclama que la Comisión Industrial se equivocó al no aplicar la doctrina de incuria y asumir jurisdicción sobre la apelación de una decisión administrativa emitida por el Administrador en el 2004. Reconoce en su discusión que la decisión aludida le fue notificada erradamente al abogado de la señora Rivera Román. Sin embargo, señala que ni esta, ni su abogado realizaron gestiones afirmativas sobre el caso por 20 años; plazo que catalogó como irrazonable. A su vez, señala que la dejadez e inacción desplegada en el caso causa perjuicio a la CSFE, pues la reapertura de casos causa una erogación de fondos y recursos considerable. Igual perjuicio reclama sufren los patronos, quienes resultan afectados por los aumentos en concepto de recargos en las primas que pagan.

La CFSE expone que en el presente caso no se brindó justificación alguna por la cual no se realizó gestión alguna por casi dos décadas. Habida cuenta de ello, expone que el error en la notificación no es causa suficiente para que la Comisión Industrial descartara la defensa de incuria y asumiera jurisdicción sobre una apelación extremadamente tardía.

En el presente caso no hay controversia alguna en cuanto a que la *Decisión del Administrador- Decisión Especial* emitida por la CFSE en

diciembre de 2004 no fue correctamente notificada. Por consiguiente, es igualmente incontrovertido el hecho de que el plazo para acudir en revisión de tal determinación no comenzó a discurrir. Ahora, tal cual citamos al exponer el derecho aplicable, debido a estas circunstancias aplica la doctrina de incuria. Como dijimos, al analizar la aplicación de esta doctrina, deben evaluarse circunstancias más allá que el mero paso del tiempo. Por ejemplo, la justificación si alguna de la demora incurrida; el perjuicio que esta acarrea y el efecto sobre intereses privados o públicos involucrados.

La Comisión Industrial rechazó la aplicación de la doctrina de incuria. Al hacerlo, manifestó que los propios predicados jurídicos de la figura de incuria probaban su inaplicabilidad a los hechos del caso, pues no encontró perjuicio alguno contra la Corporación del Fondo del Seguro del Estado. Además, al citar la *Resolución* emitida por este Tribunal de Apelaciones el 30 de agosto de 2013 en el caso De La Salud v. Ashford Presbyterian Cmty. Hosp., KLRA201300571, dictaminó que los propios fines del sistema médico hospitalario diseñado por el Estado excluyen la aplicabilidad de la defensa de incuria.

Según arriba citamos, recientemente nuestro Tribunal Supremo estableció que, al atender un recurso de revisión judicial sobre decisiones administrativas, estamos obligados a revisar las conclusiones de derecho en todos sus aspectos y no guiarnos por la deferencia que normalmente de forma automática se aplica a estas decisiones. Tras cumplir con esta directriz, encontramos que las conclusiones de derecho que la Comisión Industrial alcanzó en el caso deben ser revocadas.

Es cierto que el mero traspaso del tiempo no impide el ejercicio de la causa de acción, debiéndose evaluar otras circunstancias como la justificación de la demora, si alguna; el perjuicio que la demora acarrea y el efecto sobre intereses privados o públicos involucrados a la luz de sus hechos y circunstancias particulares. Sin embargo, nos parece que el lapso

transcurrido en el caso sin gestión alguna por parte de la señora Rivera Román merece mayor importancia y atención a la que le brindó la Comisión.

Igual de transcendental nos parece el que el expediente ante nos no revela gestión alguna por parte de la señora Rivera Román sobre su caso **por casi 20 años**. El legajo, tampoco evidencia obstáculo alguno que le hubiera impedido dar seguimiento a su reclamo. Por el contrario, los hechos demuestran que tanto ella como su abogado no inquirieron sobre el estatus de su caso durante ese tiempo sin razón alguna. Peor aún, las últimas incidencias ocurridas en cuanto a su queja sucedieron por actuación propia de la Comisión Industrial. O sea, que la reapertura del caso luego de tanto tiempo, ni siquiera ocurrió porque la señora Rivera Román o su abogado hubieran actuado. Por el contrario, más allá de someter una moción en algún momento, ambos se cruzaron de brazos por al menos 19 años, olvidándose del asunto.

Ciertamente, el tiempo transcurrido sin acción de parte de la señora Rivera Román es uno significativo que no puede ser despachado o reducido a "cierto lapso de tiempo" como hizo la Comisión[10]. Mucho menos, la falta de notificación puede ser utilizada para derrotar la invocación de la defensa de incuria como dicho cuerpo manifiesta entender.[11] El análisis efectuado por la Comisión Industrial apoya su decisión en el reconocimiento de un interés por parte de la señora Rivera Román a ser atendida por la condición respiratoria que contrasta con la ausencia de gestiones por parte de esta con tal propósito.

---

[10] Véase página 29 del Apéndice.

[11] En la página 8 de su *Resolución* la Comisión Industrial expresa: Ahora bien, más allá del argumento de la notificación adecuada a la representación legal de la lesionada, cosa que en este caso intimamos no ocurrió **y que somos del entender derrotaría la invocación de la defensa de incuria levantada por la representación legal de la Corporación del Fondo del Seguro del Estado, son los propios predicados jurídicos de la figura de incuria los que sin lugar a duda hacen de esta defensa una inaplicable** a los hechos que atendemos.

Asimismo, su examen descansa en las expresiones vertidas por este Tribunal en el caso <u>De La Salud v. Ashford Presbyterian Cmty. Hosp.</u>, KLRA201300571. Es harto conocido que las decisiones de este Tribunal de Apelaciones no son vinculantes y en todo caso pueden ser citadas solamente con carácter persuasivo. De igual forma, no nos parece que las circunstancias de dicho caso, así como aquellas de aquel en el que descansó para resolver,[12] tengan similitud alguna con la situación ante nos, por lo que su aplicación fue una indiscriminada y sin considerar las razones que condujeron al resultado alcanzado.

Por todas estas razones, nos parece que las conclusiones de la Comisión Industrial fueron contrarias a derecho. En consecuencia, resolvemos que la CFSE tiene razón en sus argumentos y a la situación de hechos aplicaba la defensa de incuria.

IV.

Por las razones antes expuestas, **revocamos** la determinación recurrida y resolvemos que, procedía aplicar la defensa de incuria contra la señora Rivera Román. Por consiguiente, la Comisión Industrial carecía de jurisdicción sobre la *Decisión del Administrador- Decisión Especial* del 16 de diciembre de 2004.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[12] <u>In re: Ángel M. Rosado Nieves</u>, 189 DPR 259 (2013).